ARAM ORDUBEGIAN (State Bar No. 185142)
ANDY S. KONG (State Bar No. 243933)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: (213) 629-7400/Facsimile: (213) 629-7401
Email: ordubegian.aram@arentfox.com

Counsel for Wall Street Mart, LP, Plaintiff and
Debtor and Debtor in Possession

DAVID M. POITRAS P.C. (State Bar No. 141309)
DAN P. SEDOR (State Bar No. 139091)
JEFFER, MANGELS, BUTLER & MARMARO LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080/Facsimile: (310) 203-0567
Email: dpoitras@jmbm.com

[Proposed] Special Litigation Counsel for Wall Street Mart, LP,
Plaintiff and Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>WALL STREET MART, LP,<br>a California limited partnership,<br><br>Debtor. | Chapter 11<br><br>Case No.   2:09-bk-42717-BR<br><br>Adv. Pro. No. 2:10-ap-_____-BR<br><br>**ADVERSARY COMPLAINT** |
| WALL STREET MART LP, a California limited partnership,<br><br>Plaintiff,<br><br>vs.<br><br>RASSOL, LLC, a Delaware limited liability company,<br><br>Defendant. | **Status Conference:**<br><br>Date:   [To Be Set]<br>Time:   [To Be Set]<br>Place:  Courtroom "1668"<br>        255 East Temple Street<br>        Los Angeles, California 90012 |

PRINTED ON RECYCLED PAPER

7033238v1

# ADVERSARY COMPLAINT

Wall Street Mart LP, a California limited partnership ("**Wall Street**" or "**Plaintiff**"), by and through its undersigned counsel, hereby alleges as follows:

## PRELIMINARY STATEMENT

1. By this complaint, Plaintiff seeks to avoid a certain prepetition fraudulent transfer of an interest in property of the Wall Street bankruptcy estate valued at approximately $19 million.[1] As set forth in detail below, on or about August 22, 2008, Ezri Namvar ("**Namvar**") caused Wall Street to pledge to Rassol, LLC, a Delaware limited liability company ("**Rassol**" or "**Defendant**"), as security for an alleged antecedent debt of Namco Capital Group, Inc. ("**Namco**") and/or Namvar, eighty percent (80%) of Wall Street's membership interests in Culver Marina Lease, LLC, a California limited liability company ("**Culver Marina**"), Buckingham Heights Lease, LLC, a California limited liability company ("**Buckingham Heights**"), Watt Leed Lease, LLC, a California limited liability company ("**Watt Leed**"), and McConnel Marina Lease LLC, a California limited liability company ("**McConnel Marina**")(collectively, the "**LLCs**")(the "**Rassol Transfer**").

2. Culver Marina, Buckingham Heights, Watt Leed and McConnel Marina each own, as ground lessor, valuable long term ground leases for improved commercial real property located in Los Angeles County, California (the "**Ground Leases**"). Plaintiff is informed and believes that the collective value of the Ground Leases is approximately $24 million.

3. It is undisputed that Rassol did not provide any value or consideration to Wall Street or the LLCs in exchange for the transfer of Wall Street's eighty percent (80%) membership interest in the Ground Leases.

4. Plaintiff alleges that Namvar caused Wall Street to make the Rassol Transfer with the actual intent to hinder, delay or defraud Plaintiff and/or creditors of Plaintiff.

---

[1] As a whole, Plaintiff believes that the property at issue is presently worth approximately $24 million - 80% of this amount is approximately $19 million.

5. Plaintiff is informed and believes that as of the date of the Rassol Transfer Wall Street was insolvent or was rendered insolvent as a result of the transfer.

6. On the date of the Rassol Transfer, Namco was a creditor of Wall Street, and was owed approximately $12,634,203.52 by Wall Street.

7. On the date of the Rassol Transfer, the LLCs had pre-existing senior third party secured debt against them in excess of $12,000,000.

8. On the date of the Rassol Transfer, the limited partnership agreement of Wall Street reflects that Beshmada, LLC (“**Beshmada**”) owned 49% of the partnership interests in Wall Street.

9. On the date of the Rassol Transfer, the limited partnership agreement of Wall Street reflects that the Namvar Family Trust (the "**Namvar Trust**") owned 49% of the partnership interests in Wall Street.

10. The Namvar Trustee (defined below) revoked the Namvar Trust following the Namvar Petition Date (defined below) and as a result, all assets of the Namvar Trust, including the 49% membership interest in Wall Street, became assets of the Namvar bankruptcy estate (see below).

11. As set forth in detail below, the Rassol Transfer is avoidable by Plaintiff under applicable federal and state law. By this Complaint, Plaintiff seeks a judgment of this Court avoiding the Rassol Transfer in its entirety.

## JURISDICTION AND VENUE

12. This adversary proceeding arises under title 11 of the United States Code, or arises in or is related to the bankruptcy case of Plaintiff within the meaning of 28 U.S.C. § 1334(b). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), 1334(b) and 1334(e).

13. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

15. Defendant is subject to the jurisdiction of this Court.

## THE INTERESTED PARTIES

16. Plaintiff Wall Street Mart LP, is a California limited partnership. Wall Street filed a voluntary chapter 11 petition with this Court on November 20, 2009 (the "**Wall Street Petition Date**"), commencing case no. 2:09-bk-42717-BR (the "**Wall Street Case**"). As of November 12, 2009, Namco became the general partner of Wall Street, and holds a .01% partnership interest therein. As of the Wall Street Petition Date, the limited partners of Wall Street were Namvar and Beshmada, each holding approximately 48.9951%. The balance of the partnership interests, approximately 1.9998%, is held by Sora, Inc. ("**Sora**"). Prior to the Rassol Transfer, Sora was owned and controlled Solomon Rastegar (see below). As of the date of the Rassol Transfer, Sora was the general partner of Wall Street. As of the date of this complaint, it is unclear to Plaintiff who owns or controls Sora.

17. Defendant Rassol, LLC is a Delaware limited liability company. The principal of Rassol is an individual named Solomon Rastegar ("**Rastegar**"). Rastegar has a long history with Namco and Namvar and a very close personal relationship with Namvar. Plaintiff alleges that Rastegar, and consequently Rassol, are insiders of Namvar and Namco, as the term insider is defined and otherwise used in the context of § 101(31) of the Bankruptcy Code.

18. An involuntary chapter 11 petition was filed against Namco in this Court on December 22, 2008 (the "**Namco Petition Date**"), commencing case no. 2:08-32333-BR (the "**Namco Case**"). An order for relief was entered in the Namco Case on January 29, 2009. Bradley D. Sharp is the duly appointed, qualified and acting chapter 11 trustee of Namco. By order entered May 8, 2009, Mr. Sharp was appointed as the chapter 11 trustee of Namco.

19. An involuntary chapter 11 petition was filed against Namvar in this Court on December 22, 2008 (the "**Namvar Petition Date**"), commencing case no. 2:08-32349-BR (the "**Namvar Case**"). An order for relief was entered in the Namvar Case on January 29, 2009. R. Todd Neilson is the duly appointed, qualified and acting chapter 11 trustee of Namvar. By order entered March 11, 2009, Mr. Neilson was appointed as the chapter 11 trustee of Namvar.

20. Beshmada, LLC is a California limited liability company. An involuntary chapter 7 petition was filed against Beshmada on June 17, 2009 (the **"Beshmada Petition Date"**), commencing case no. 2:09-bk-25523-BR (the **"Beshmada Case"**). As of the date of this complaint, no order for relief has been entered in the Beshmada Case. The members of Beshmada are the four children of Namvar. As of the date of the Rassol Transfer, Namvar was the manager of Beshmada. As of the Beshmada Petition Date and continuing through the date of this complaint, Louis A. Cicalese, LLC has been the manager of Beshmada. *See Joint Motion of the Chapter 11 Trustee of Namco Capital Group, Inc., and the Chapter 11 Trustee for Ezri Namvar for an Order: (1) Approving that Certain Stipulation Between Debtor Ezri Namvar and the Chapter 11 Trustee of Ezri Namvar and the Chapter 11 Trustee of Namco Capital Group, Inc., Re Control of Affiliated Limited Liability Companies; (2) Approving that Certain Consultant and Indemnity Agreement Between the Estates and Louis A. Cicalese, LLC; and (3) Authorizing the Estates to Advance Funds to Affiliated Limited Liability Companies and Approving the Namco Capital and LLC Operating Budgets* (Namco Docket No. 465).

## BACKGROUND

### Namco's Business Model.

21. As of the Namco Petition Date, Namvar was the President, Chief Financial Officer, sole director and sole shareholder of Namco.

22. Prior to the Namco Petition Date, Namco had been in business for approximately 20 years. Namco's general business model was relatively simple and straightforward - Namco would borrow money from individuals (**"Lender Funds"**), most often members of the West Los Angeles Persian community (individually hereinafter referred to as a **"Namco Lender"**), agree to pay such Namco Lender a fixed rate of return, and Namco would then either lend those funds to third parties (hereinafter a **"Borrower"**), at interest rates typically six percent or more higher than the cost of capital payable to the Namco Lender, or invest such funds in various real estate projects. Most often, the funds provided by the Namco Lenders were not earmarked for a specific purpose; rather, such funds were pooled by Namco and lent to third parties or otherwise invested as opportunities were presented.

23. Typically, the transactions between Namco and a Namco Lender would be memorialized by way of an unsecured promissory note from Namco to the Namco Lender ("**Note**" or "**Notes**"), although in some cases Namco secured or attempted to secure the Notes in various ways, typically by assigning beneficial interests in deeds of trust owned by Namco or affiliates of Namco. Namvar purportedly personally guaranteed many of Namco's obligations to the Namco Lenders. So long as a Note was outstanding, Namco typically paid such Namco Lender interest on a monthly basis from Namco's general purpose/operating funds. The loans that Namco made to Borrowers were typically real estate loans secured by deeds of trust.

24. In substantial part, Namco's ability to raise capital was based upon Namvar's personal relationships with Namco Lenders such as Rastegar.

25. Namco's ability to raise capital and its business overall began to deteriorate in 2007 and the deterioration continued throughout 2008, culminating with the involuntary bankruptcy filings.

26. By way of example only, Namvar owned 100% of the holding company which owned Security Pacific Bank (the "**Bank**"). The Bank was seized by the Federal Deposit Insurance Commission on November 7, 2008.

27. During 2008, Namco and Namvar sold off substantial assets to try and keep the Namco Lenders at bay, and attempted to provide collateral to various Namco Lenders, often in the form of actual and constructive fraudulent transfers or preferential transfers, such as those described in detail in this complaint.

**Namco's Transactions with Rastegar.**

28. Rastegar, his family trust and various members of Rastegar's family were parties to several transactions with Namco and Namvar over a span of several years prior to the filing of the bankruptcy cases.

29. As of August 21, 2008, the date before the Rassol Transfer, Namco's books and records reflect that Namco owed the Rastegar Family Trust and five members of Rastegar's family collectively $18,525,000, as detailed in the following schedule -

| | |
|---|---:|
| • Rastegar Family Trust | $5,590,000 |
| • Mahi Rastegar | 700,000 |
| • Roxana Rastegar | 7,510,000 |
| • Jessica Kimiabakhsh | 1,360,000 |
| • Michele Kimiabakhsh | 1,420,000 |
| • Shabnam Kimiabakhsh | 1,945,000 |

30. Namco's books and records reflect that dated (as of) August 22, 2008, the six Rastegar related accounts detailed above were closed and the balances were transferred by general journal entries to an account in the name of defendant Rassol, LLC. Even though the date listed in the general journal entries is August 22, 2008, the general journal entries to physically record these transactions were made postpetition on March 2, 2009.

31. Plaintiff does not concede herein that the amounts set forth above in paragraph 29 of this Complaint or any portion thereof are/were in fact owed by Namco and/or Namvar to Rassol or the Rastegar family described above. Plaintiff's investigation into these transactions is ongoing and this complaint will be amended as necessary and appropriate upon the conclusion of such investigation.

**The Rassol Transfer.**

32. Dated as of August 22, 2008, Namvar caused himself and Namco to sign a *Secured Promissory Note* (the "**Rassol Note**") in favor of defendant Rassol in the amount of $18,525,000. A true copy of the Rassol Note is attached as **Exhibit A** to that certain *Loan Agreement*, a true copy if which Loan Agreement is attached to this complaint as **Exhibit 1**.

33. Dated as of August 22, 2008, Namvar purportedly caused Wall Street to sign a *Pledge and Security Agreement* (the "**Wall Street Pledge**"), whereby Wall Street pledged eighty percent (80%) of its interest in the LLCs to defendant Rassol. A true copy of the Wall Street Pledge is attached to the Loan Agreement as **Exhibit B**.

34. Plaintiff is informed and believes that Namvar and Rastegar intentionally chose to pledge only eighty percent of the membership interests in the LLCs to avoid a default by the LLCs under the secured loan agreement concerning the Ground Leases and the LLCs.

35. As of the date of the Pledge Agreement, no money or obligation was owed by Wall Street or the LLCs to Rassol, Rastegar or any member of the Rastegar family.

36. Wall Street received no consideration or value in exchange for the Wall Street Pledge.

37. The Wall Street Pledge is signed by Namvar as "authorized agent" of Wall Street. As set forth above, Wall Street is a California limited partnership. As of August 22, 2008, Sora was the general partner of Wall Street. Only Sora had the authority to act for Wall Street and only in accordance with the *Agreement of Limited Partnership of The Wall Street Mart, a California Limited Partnership* (the **"Partnership Agreement"**). A true copy of the Partnership Agreement is attached to this complaint as **Exhibit 2**.

38. Plaintiff is informed and believes that Namvar was not properly authorized by Sora to sign the Pledge Agreement.

39. Plaintiff is informed and believes that as of August 22, 2008, Namvar was not an officer or director of Sora.

40. Paragraph 9.2 of the Partnership Agreement provides: "Certain Limitations on the General Partner. The General Partner shall have no authority to: (a) Do any act in contravention of the Act, this Agreement, or the Certificate of Limited Partnership of the Partnership, as then in effect. (b) Do any act not herein authorized which would make it impossible to carry on the ordinary business of the Partnership. * * * (d) Possess partnership property, or assign the Partnership's rights in any partnership property, for other than a partnership purpose. * * * (g) Lend to any person any of the funds of the Partnership other than for a business purpose of the Partnership. (h) Perform any act which, pursuant to this Agreement, requires approval by a vote of the Limited Partners, without first receiving the required approval."

41. Paragraph 9.7(b)(iv) of the Partnership Agreement provides: "Powers of Limited Partners. (b) The Limited Partners shall have the right to vote on the following matters: (iv) Any sale, exchange, refinance, or pledge of the Property."

42. Plaintiff is informed and believes that the limited partners of Wall Street did not approve the Wall Street Pledge in accordance with the applicable terms of the Partnership Agreement.

43. Dated as of August 20, 2008, Namvar caused three non-debtor entities to sign a *Multi-Party Guaranty* ("**Guaranty**") to guaranty the debt purportedly owed by Namco and/or Namvar to defendant Rassol, these entities being 780B LaBrea, LLC ("**LaBrea**"), Arlington 360 Associates, LP ("**Arlington**") and Wishlab 90 Nevada, LLC ("**Wishlab**"). A true copy of the Guaranty is attached to the Loan Agreement as **Exhibit F**.

44. On August 20, 2008, Beshmada held eighteen percent (18%) of the membership interests in LaBrea, Arlington and Wishlab.

45. On August 20, 2008, LaBrea, Arlington and Wishlab each owned real property located in Clark County, Nevada.

46. As part of the overall Rassol Transfer scheme, Namvar caused each of LaBrea, Arlington and Wishlab to execute and record deeds of trust in favor of Rassol to encumber the real property owned by them to secure the debt purportedly owed by Namco and/or Namvar to defendant Rassol (the "**Deeds of Trust**").

47. On August 20, 2008, no money or obligation was owed by LaBrea, Arlington or Wishlab to Rassol.

48. None of LaBrea, Arlington, Wishlab or Beshmada received any consideration or value for the Guaranty or the Deeds of Trust provided to and for the benefit of defendant Rassol.

49. Plaintiff is investigating the Guaranty and Deeds of Trust and may amend this complaint to include claims arising out of such transactions as necessary and appropriate.

**Wall Street and the Ground Leases.**

50. On the date of the Rassol Transfer, Plaintiff is informed and believes that the collective value of the Ground Leases was approximately $16-19 million.

51. On the date of the Rassol Transfer, the Ground Leases were encumbered by a first priority deed of trust and security interest pursuant to that certain Loan Agreement with Countrywide Commercial Real Estate Finance, Inc. (the "**Countrywide Loan**").

52. On the date of the Rassol Transfer, the amount owing on account of the Countrywide Loan was in excess of $12,000,000.

53. On the date of the Rassol Transfer, Wall Street owed Namco not less than $12,634,203.

54. On the date of the Rassol Transfer, the LLCs owed various debts in the ordinary course of business, including, but not limited to, significant contingent liabilities arising out of the Ground Leases themselves.

55. Based upon the foregoing, Wall Street made the Rassol Transfer while it was insolvent, or it became insolvent as a result of the Rassol Transfer.

## FIRST CLAIM FOR RELIEF

## FRAUDULENT TRANSFER AGAINST RASSOL (SECTION 3439.04(a)(1) OF CALIFORNIA CIVIL CODE AND 11 U.S.C. §§ 544(b) AND 550)

56. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

57. Wall Street received no consideration or value in connection with the Rassol Transfer.

58. The Rassol Transfer was made with actual intent to hinder, delay, or defraud actual creditors of Wall Street holding unsecured claims allowable with the meaning of §§ 502 and 544(b) of the Bankruptcy Code.

59. The Rassol Transfer should be avoided and preserved pursuant to §§ 3439.04(a)(1) and 3439.07(a)(1) of the California Civil Code and §§ 544(b) and 551 of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF

## FRAUDULENT TRANSFER AGAINST RASSOL (SECTION 3439.04(a)(2) OF CALIFORNIA CIVIL CODE AND 11 U.S.C. §§ 544(b) AND 550)

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

61. Wall Street received no consideration or value in connection with the Rassol Transfer.

62. At the time the Rassol Transfer was made, Wall Street (a) intended, believed, or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due; and/or (b) was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

63. At all times relevant hereto, there were actual creditors of Wall Street holding unsecured claims allowable with the meaning of §§ 502 and 544(b) of the Bankruptcy Code.

64. The Rassol Transfer should be avoided and preserved pursuant to §§ 3439.04(a)(2) and 3439.07(a)(1) of the California Civil Code and §§ 544(b) and 551 of the Bankruptcy Code.

### THIRD CLAIM FOR RELIEF

### FRAUDULENT TRANSFER AGAINST RASSOL (SECTION 3439.05 OF CALIFORNIA CIVIL CODE AND 11 U.S.C. §§ 544(b) AND 550)

65. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

66. Wall Street received no consideration or value in connection with the Rassol Transfer.

67. Wall Street was either insolvent at the time of the Rassol Transfer or became insolvent as a result of the Rassol Transfer.

68. At all times relevant hereto, there were actual creditors of Wall Street holding unsecured claims allowable with the meaning of §§ 502 and 544(b) of the Bankruptcy Code.

69. The Rassol Transfer should be avoided and preserved pursuant to §§ 3439.05 and 3439.07(a)(1) of the California Civil Code and §§ 544(b) and 551 of the Bankruptcy Code.

### FOURTH CLAIM FOR RELIEF

### FRAUDULENT TRANSFER AGAINST RASSOL (11 U.S.C. §§ 548 AND 550)

70. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

71. Wall Street received no consideration or value in connection with the Rassol Transfer.

72. The Rassol Transfer was made with actual intent to hinder, delay, or defraud actual and future creditors of Wall Street holding unsecured claims allowable with the meaning of §§ 502 and 544(b) of the Bankruptcy Code.

73. The Rassol Transfer should be avoided and preserved pursuant to §§ 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code.

## FIFTH CLAIM FOR RELIEF

## FRAUDULENT TRANSFER AGAINST RASSOL (11 U.S.C. §§ 548 AND 550)

74. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

75. Wall Street received no consideration or value in connection with the Rassol Transfer.

76. The Rassol Transfer was made within two years of the Wall Street Petition Date.

77. At the time of the Rassol Transfer, Wall Street (i) was insolvent or became insolvent as a result of the Rassol Transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Wall Street was unreasonably small; and/or (iii) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

78. The Rassol Transfer should be avoided and preserved pursuant to §§ 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code.

## SIXTH CLAIM FOR RELIEF

## RECOVERY OF ATTORNEYS' FEES AND COSTS AND ANY OTHER APPROPRIATE SANCTION

79. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this complaint.

80. Pursuant to Rule 7008(b) of the Federal Rules of Bankruptcy Procedure, Plaintiff separately states its request for attorneys' fees, costs and any other sanction the Court deems proper.

81.  Plaintiff is also entitled to judgment for all attorneys' fees and costs incurred in this matter pursuant to the terms of the Loan Agreement and the Rassol Note as well as the Court's inherent powers and other applicable state and federal law.

### RESERVATION OF RIGHTS

82.  Plaintiff believes that additional claims in favor of Plaintiff against Defendant and/or other parties may exist. Plaintiff reserves any and all rights to bring such claims to the extent authorized by the Court and/or applicable law.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

(1) avoiding and preserving the Rassol Transfer; and

(2) granting such other and further relief, as the Court deems just, proper and equitable, including Plaintiff's fees, costs, and expenses of this action.

Respectfully submitted

Dated: May 25, 2010    ARENT FOX LLP

By: /s/ Aram Ordubegian
ARAM ORDUBEGIAN
Counsel for Plaintiff Wall Street Mart, LP, Debtor and Debtor in Possession

Dated: May 25, 2010    JEFFER, MANGELS, BUTLER & MARMARO LLP

By: /s/ David M. Poitras
DAVID M. POITRAS P.C.
[Proposed] Special Litigation Counsel for Plaintiff Wall Street Mart, LP, Debtor and Debtor in Possession